[L.A. No. 31418. Aug. 26, 1982.]

MERRELL VANNIER et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Barrett S. Litt and H. Peter Young for Petitioners.

No appearance for Respondent.

John K. Van de Kamp, District Attorney, Harry B. Sondheim and John W. Messer, Deputy District Attorneys, for Real Party in Interest.

OPINION

**BROUSSARD, J.**—Petitioners Merrell and Francine Vannier seek writs of prohibition and mandate to compel respondent court to vacate an order directing them to appear as witnesses before the grand jury in Pinellas County, Florida.

A judge of the Circuit Court for Pinellas County, Florida, issued and filed material witness certificates for petitioners, California residents, seeking their appearance before the county grand jury on three specified days. The certificates were issued pursuant to Florida Statutes section 942.03, that state's version of the Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings. The certificates state that petitioners were material and necessary witnesses who would give testimony which was relevant and material to a grand jury investigation. The certificates are based on an affidavit of Denis J. Quilligan, the chief investigator for the State Attorney of the Sixth Judicial District of Florida, encompassing Pinellas County and the Cities of St. Petersburg and Clearwater.

The affidavit states that the grand jury is about to commence an investigation into possible criminal activities of the Church of Scientology and its members. The United States government has publicly released

documents seized in California in 1977 pursuant to a search warrant. The documents show repeated plans by church officials to discredit Pinellas County organizations, government offices and individuals which were critical of the church. The documents indicate detailed plans by church officials to falsely accuse a local newspaper reporter with sexually assaulting a young boy, to deliver an apparent bribe from organized crime figures to the office of a reporter of another local newspaper, to charge the Mayor of Clearwater with involvement in a faked automobile accident and to frame him for a charge of bigamy based on bribes and falsification of records. The documents also indicate a plan to infiltrate the state attorney's office and penetrate other local government offices. The affidavit also states that based on information secured pursuant to the search warrant, nine church officials were convicted in Washington, D.C. of such crimes as conspiracy to obstruct justice, conspiracy to burglarize government offices and steal government documents, and theft of government property.

According to the affidavit, petitioners are church members who moved to Pinellas County in 1976 and left in September of 1977. Merrell, an attorney, applied for a position as assistant state attorney, and while his application was pending he was in the office on a daily basis. During this period a portable radio tuned to the radio band used for office communications was stolen, and subsequent investigation has failed to reveal anyone else who had both a motive and the opportunity to take the radio. Information has been received that documents of the state attorney's office are in the possession of church members and that some individual has infiltrated the office. Merrell was subsequently hired by a local private law firm which was representing the mayor in litigation with the church. Without revealing his membership in the church, he attempted to have the mayor drop the case and apologize.

Francine worked for a law firm which was handling litigation between a local newspaper and the church, and confidential documents from the law firm file were seized from the church in the execution of the 1977 search warrant.

Upon learning that the Los Angeles District Attorney's office was seeking to speak with them, petitioners appeared voluntarily and accepted service of an order to appear at a hearing on the Florida request. Petitioners filed a written motion to compel disclosure whether California, Florida or federal authorities had engaged in electronic surveillance of communications involving either of them. It was asserted on informa-

tion and belief that the Quilligan affidavit and the questions the grand jury intends to propound are products of illegal electronic surveillance.

At the subsequent hearing, petitioners were found to be material and necessary witnesses and ordered to appear before the grand jury. They were provided with round-trip air transportation and $117 each to cover the cost of surface transportation and daily maintenance while en route to and in Florida. Although petitioners' motion to compel disclosure of electronic surveillance was argued at the hearing, the trial court did not specifically rule on the motion.

## THE UNIFORM ACT

The Legislature has adopted the Uniform Act to Secure the Attendance of Witnesses From Without the State in Criminal Cases. (Pen. Code, § 1334 et seq.) Florida has adopted similar legislation. (Fla. Stats., § 942 et seq.)

Penal Code section 1334.2 provides that a person shall be required to appear at a hearing upon receipt of a certificate of a court of another state, which has similar legislation, asserting that the person is a material witness in a criminal prosecution or grand jury investigation. At the hearing it shall be determined whether the witness is "material and necessary," whether it will cause undue hardship to compel him to testify in the requesting state, whether under the law of the requesting state the witness will be protected from arrest and service of civil and criminal process, and whether witness fees, expenses, and per diem will be paid. When, as in the instant case, the witness elects to travel by air, he is entitled to the minimum round trip scheduled airlines fare, 20 cents per mile for necessary surface travel at either end of the flight, $20 for each day of required travel or attendance as a witness, and reimbursement for any additional expenses which the judge of the requesting court shall find reasonable and necessary. The section also states that in the hearing, the other court's certificate "shall be prima facie evidence of all the facts stated therein."[1]

---

[1]Penal Code section 1334.2 provides: "If a judge of a court of record in any state, which by its laws has made provision for commanding persons within that state to attend and testify in this state, issues a certificate under the seal of the court that there is a criminal prosecution pending in the court, or that there is a grand jury investigation, that a person within this state is a material witness in such prosecution or grand jury investigation, and that his presence will be required for a specified number of days, then, upon presentation of the certificate to a judge of a court of record in the county

## VALIDITY

Petitioners claim that the uniform act is invalid on its face in violation of article I, section 1 of the California Constitution because it represents an incursion on the liberty of the witness.[2] It is also urged that the act is invalid as applied to them because Florida has not demonstrated that it has a compelling and overriding interest in securing their attendance that may not be achieved by less restrictive means.

In *New York* v. *O'Neill* (1959) 359 U.S. 1 [3 L.Ed.2d 585, 79 S.Ct. 564], the United States Supreme Court upheld the validity of the uniform act against challenges based on the privileges and immunities and

---

in which the person is, a time and place for a hearing shall be fixed by the judge and he shall make an order directing the witness to appear at the hearing.

"If at the hearing, the judge determines that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution or grand jury investigation in the other state, and that the laws of the state, in which the prosecution is pending or in which there is a grand jury investigation, will give to the witness protection from arrest and service of civil and criminal process and will furnish in advance to the witness the sum of ten cents ($0.10) for each mile necessarily traveled if the witness elects surface travel or the minimum round trip scheduled airlines fare plus twenty cents ($0.20) a mile for necessary surface travel at either end of the flight if the witness elects air travel, and per diem of twenty dollars ($20) for each day that he is required to travel and attend as a witness and that the judge of the court in which the witness is ordered to appear will order the payment of witness fees authorized by law for each day the witness is required to attend the court plus reimbursement for any additional expenses of the witness which the judge of the court in which the witness is ordered to appear shall find reasonable and necessary, he shall issue a subpoena, with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending, or where the grand jury investigation is, at a time and place specified in the subpoena. In any such hearing the certificate shall be prima facie evidence of all the facts stated therein.

"If the certificate recommends that the witness be taken into immediate custody and delivered to an officer of the requesting state to assure his attendance therein, the judge may, in lieu of notification of the hearing, direct that the witness be forthwith brought before him for the hearing.

"If the judge at the hearing, is satisfied of the desirability of the custody and delivery, for which determination the certificate shall be prima facie proof of this desirability, he may, in lieu of issuing subpoena, order that the witness be forthwith taken into custody and delivered to an officer of the requesting state.

"If the witness, who is subpoenaed as herein provided, after being paid or tendered by some properly authorized person the sum or fare, and per diem set forth in this section, fails without good cause to attend and testify as directed in the subpoena, he shall be punished in the manner provided for the punishment of any witness who disobeys a subpoena issued from a court of record in this state."

[2]Article I, section 1 provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

due process clauses of the federal Constitution. The court pointed out that a "citizen cannot shirk his duty, no matter how inconvenienced thereby, to testify in criminal proceedings and grand jury investigations in a State where he is found" and that the limitation on liberty under the act is no greater than that imposed upon a material witness required to attend a criminal proceeding within the state. (359 U.S. at pp. 7, 11 [3 L.Ed.2d at pp. 589, 592].) The court stated that there "are restrictions on the exercise of the claimed constitutional right. One such restriction derives from the obligation to give testimony. This obligation has been sustained where it necessitated travel across the Atlantic Ocean. *Blackmer v. United States,* 284 U.S. 421. [¶] More fundamentally, this case does not involve freedom of travel in its essential sense. At most it represents a temporary interference with voluntary travel." (359 U.S. at pp. 7-8, fn. omitted [3 L.Ed.2d at pp. 589-590].) Citing *New York* v. *O'Neill,* this court recognized the validity of the act in *People* v. *Cavanaugh* (1968) 69 Cal.2d 262, 266, footnote 3 [70 Cal. Rptr. 438, 444 P.2d 110].

■ We are satisfied that the inalienable rights protected by article I, section 1 do not include a right to refuse to be a witness in judicial proceedings within the state. A judicial system with power to compel attendance of witnesses is essential to effective protection of the inalienable rights guaranteed by the section. Our Constitution has provided for witness rights and duties in other specific provisions (art. I, §§ 2, subd. (b), 4, 10, 13, 15), and a restriction on the inalienable rights of article I, section 1 is the obligation to attend and give testimony.

■ Even if we assume that article I, section 1 protects liberty to travel and to refrain from travelling without the state, application of the strict scrutiny doctrine is not required. Both the United States Supreme Court and this court have recognized that not every limitation or incidental burden on a fundamental right is subject to the strict scrutiny doctrine. When the regulation merely has an incidental effect on the exercise of protected rights, strict scrutiny is not applied. The doctrine is applied only when there exists a real and appreciable impact on, or a significant interference with, the exercise of a fundamental right. (E.g., *Zablocki v. Redhail* (1978) 434 U.S. 374, 386-387 [54 L.Ed.2d 618, 630-631, 98 S.Ct. 673]; *Fair Political Practices Com.* v. *Superior Court* (1979) 25 Cal.3d 33, 47 [157 Cal.Rptr. 855, 599 P.2d 46].) The restriction imposed by the uniform act is not only temporary but also reasonable, and the act contains appropriate standards to prevent abuse.

It is directed at the securing of testimony rather than regulation of travel and does not constitute a significant interference with travel rights.

█ California has a fundamental interest in complying with the demands of other jurisdictions which have adopted similar legislation because the basis of the act is reciprocity, and compliance is essential to obtaining witnesses from other jurisdictions for California judicial proceedings. By providing a mechanism for securing witnesses, the act contributes to the protection of the inalienable rights recognized by article I, section 1, and we conclude that its limited restraint does not violate the section.

Moreover, even if we assume that the strict scrutiny doctrine is applicable, we would reach the same conclusion. So far as appears, adoption of the uniform act is the only means to secure the state's fundamental interest in obtaining recalcitrant, out-of-state, "material and necessary" witnesses to testify in this state, and obviously the "material and necessary" limitation is precisely the measure of the fundamental interest. Testimony by way of deposition or answer to interrogatory while often valuable is not the equivalent of personal testimony, and the strict scrutiny doctrine does not require a state to sacrifice part of its fundamental interest.

█ Petitioners also claim that the act is invalid in violation of their constitutional rights of confrontation and cross-examination. They point out that Penal Code section 1334.2 (see fn. 1) provides the certificate from the requesting state shall be "prima facie evidence of all the facts stated therein" at the hearing and that the act does not contemplate that officers of the requesting state will testify at the hearing.

Petitioners are not criminal defendants. They are sought only as witnesses. While in the requesting state, they are immune from arrest and service of civil or criminal process in connection with matters arising prior to entry into the state. (Pen. Code, §§ 1334.2, 1334.4.) Affidavits are competent evidence where authorized by statute. (*Tanzola* v. *De Rita* (1955) 45 Cal.2d 1, 10 [285 P.2d 897]; *McLellan* v. *McLellan* (1972) 23 Cal.App.3d 343, 359 [100 Cal.Rptr. 258].) And affidavits have traditionally been used to obtain examination of a witness. (Code Civ. Proc., § 2009.) Petitioners have cited no authority that an affidavit procedure may not be used to secure attendance of witnesses, and in view of the temporary restriction imposed by the uniform act, we conclude that the statutory affidavit procedure does not violate their

constitutional rights. (*Epstein* v. *People of State of New York* (Fla.App. 1963) 157 So.2d 705, 707-708.)

### MATERIAL AND NECESSARY WITNESSES

Section 1334.3 provides that the requesting court's certificate "shall be prima facie evidence of all the facts stated therein" (see fn. 1), and other jurisdictions have concluded that similar statutory provision permits the certificate to be framed in the statutory language without further showing the basis of the requesting judge's decision. (*Epstein* v. *People of State of New York, supra*, 157 So.2d 705, 707; see *Appel* v. *State* (1966) 243 Md. 218 [220 A.2d 301, 302-303].) It is unnecessary to determine whether the judge's certificate should be accepted as conclusive when, as here, no evidence is offered to show that the witnesses are not material or necessary. The certificate in the instant case incorporates an affidavit setting forth facts warranting the conclusion that the witnesses are likely to have information material and necessary to the grand jury inquiry.

Florida seeks the witnesses for a grand jury investigation, not as criminal defendants or as witnesses in a criminal trial, and the scope of inquiry is obviously broad including both the determinations whether crimes have been committed and whether any persons should be charged. Although the affidavit does not indicate the testimony expected to be obtained from petitioners, to require such a showing would greatly impair the applicability of the uniform act precluding its use in most cases of uncooperative witnesses.

Unaware of the testimony to be obtained, it is apparent that the Florida officials are not in a position to show that they cannot secure similar testimony from other sources. While the requirement that the witness be necessary makes the existence of cumulative evidence a relevant consideration (*People* v. *Cavanaugh, supra*, 69 Cal.2d 262, 269, 271), there is nothing to indicate that petitioners' testimony will be cumulative, and the lower court's determination that petitioners are material and necessary witnesses to the grand jury inquiry must be upheld.

Cases such as *People* v. *Cavanaugh, supra*, 69 Cal.2d 262, relied upon by petitioner, do not establish that a showing that the evidence will not be cumulative is essential to determination that the witnesses are necessary. In that case it was held that a judge did not err in refus-

ing to request Massachusetts to require two claimed alibi witnesses to be ordered to California. On the basis of questions prepared by defense counsel and propounded by a local attorney in Massachusetts to four claimed alibi witnesses, the court requested that two be ordered to California, and they testified. The judge concluded that the testimony of the other two would be cumulative, but he permitted the questions propounded to them and their responses to be read to the jury. It was held that the judge's ruling was within his discretion. *Cavanaugh* and similar cases relied upon differ from the instant case in that here both the requesting and ordering courts have determined that the witnesses are material and necessary and that there is no showing in the instant case that the witnesses' testimony will be cumulative.

## COMPENSATION

■ Pointing out that the Florida statute provides lesser per diem and travel allowances than the California statute, petitioners claim that the reciprocity contemplated by Penal Code section 1334.2 is absent. However, the reciprocity provision of the section requires only that the state "by its laws has made provision for commanding persons within the state to attend and testify in this state." The reciprocity provision does not require that the statutory payment provisions be identical.

Section 1334.2 requires that the judge determine that the requesting state will pay in advance certain travel expenses and per diem allowances, "and that the judge of the court in which the witness is ordered to appear will order the payment of witness fees authorized by law for each day the witness is required to attend the court plus reimbursement for any *additional expenses of the witness which the judge of the court in which the witness is ordered to appear shall find reasonable and necessary.*" (Italics added.) The travel allowance and per diem provided for petitioners are in accord with the California statute. It is not claimed that Florida will refuse to pay any witness fees mandated by its law; petitioners' position is that there is no assurance that Florida will reimburse them for *additional* expenses. However, the additional expenses are to be reimbursed after the Florida judge finds them to be reasonable and necessary. The Florida Supreme Court has acknowledged that courts have inherent power to pay necessary witness expenses (*Rose* v. *Palm Beach Cty.* (Fla. 1978) 361 So.2d 135, 137-139), and in the absence of any evidence that Florida courts are refusing reimbursement of witness expenses they have found to be reasonable and

necessary, there is no basis for a conclusion that the courts will refuse reimbursement for "additional expenses."

ELECTRONIC SURVEILLANCE

■ Preliminarily, the People assert that petitioners may not raise the issue of electronic surveillance because they did not obtain a trial court ruling on their motion to disclose electronic surveillance. Since the motion asserted that the affidavit was a product of illegal electronic surveillance, it was apparent that the motion raised an evidentiary issue to be determined before the judge ordered them to appear before the grand jury. This is not a situation where the judge has admitted evidence subject to a motion to strike and the movant failed to renew the motion at the end of the presentation of evidence with the result that it was overlooked. The motion was not only presented in writing before the hearing, but was orally argued at the hearing shortly before the judge ordered them to appear before the grand jury. Petitioners were not required to reassert an evidentiary matter after the judge had ruled on the ultimate issue before him. Accordingly, the failure to obtain a ruling does not preclude consideration of the electronic surveillance issue.

Both the Congress and our Legislature have enacted statutes regulating electronic surveillance. "Although some differences in scope exist, the federal and state acts regulate the same area. In general terms, title III [of the Omnibus Crime Control and Safe Streets Act of 1968] prohibits the interception of wire and oral communications (18 U.S.C.A. § 2511(1)(a)) and their disclosure or use (18 U.S.C.A. § 2511(1)(c)-(d)) except where court authorization is obtained by a law enforcement official (18 U.S.C.A. §§ 2516-2518) and with other limited exceptions. The state Invasion of Privacy Act ([Pen. Code,] §§ 630-637.2) forbids wiretapping (§ 631) and electronic eavesdropping (§ 632) except by law enforcement officers where such activity was permitted prior to the enactment of the state act (§ 633) and with other limited exceptions (see, e.g., § 633.5). Thus the scheme of the federal act is based on the type of communication, that is, whether it is wire or oral; the state act, by contrast, on the type of surveillance, that is, whether it is wiretapping or eavesdropping. (Note (1969) 57 Cal.L.Rev. 1182, 1210.) Where evidence is obtained by unlawfully intercepting a communication, both acts make it inadmissible in any judicial, administrative, legislative, or any other proceeding. (18 U.S.C.A. § 2515; [Pen. Code,] §§ 631, 632.)"

(*People* v. *Conklin* (1974) 12 Cal.3d 259, 263 [114 Cal.Rptr. 241, 522 P.2d 1049] (fn. omitted).)[3]

Recognizing that the federal prohibitions were binding on the state, *Conklin* held that Congress had not preempted the field so as to prohibit the states from adopting further limitations on electronic surveillance. (12 Cal.3d 259, 262 et seq.)

 A witness charged with contempt for failing to answer questions before a grand jury is entitled to prove that the grand jury questions were based on illegal electronic surveillance and the government will be compelled to disclose whether there was electronic surveillance. (*Gelbard* v. *United States* (1972) 408 U.S. 41, 47 et seq. [33 L.Ed.2d 179, 186 et seq., 92 S.Ct. 2357].) Florida has also held that a witness summoned before the grand jury may compel disclosure of electronic surveillance prior to the grand jury hearing. (*In re Grand Jury Investigation* (*Cobo*) (Fla. 1973) 287 So.2d 43, 46 et seq.) The issue presented in the instant case is whether the rendering state, in addition, should inquire into electronic survillance or whether such inquiry should be left to proceedings in the requesting state.

The uniform act provides a speedy and effective procedure to summon witnesses living in another state. (*United States* ex rel. *Drew* v. *Myers* (3d Cir. 1964) 327 F.2d 174, 182.) To permit the witness to compel a search in the rendering state to discover whether there has been electronic surveillance would greatly hamper the effectiveness of the act.

Moreover, in those cases where there has been electronic surveillance, it is far more likely to have occurred in the requesting state than the rendering state. Hearings in the rendering state on the issue of electronic surveillance will often require transportation of witnesses, delaying and rendering ineffective the uniform act.

Criminal discovery in California is primarily a common law doctrine (*Holman* v. *Superior Court* (1981) 29 Cal.3d 480, 483 [174 Cal.Rptr.

[3]United States Code title 18, section 2515 provides: "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the *United States*, a *State*, or a *political subdivision thereof* if the disclosure of that information would be in violation of this chapter." (Italics added.)

506, 629 P.2d 14]; *People* v. *Municipal Court* (*Runyan*) (1978) 20 Cal.3d 523, 528 [143 Cal.Rptr. 609, 574 P.2d 425, 2 A.L.R.4th 68]), and because of the substantial burdens involved, the availability of a forum in the requesting state, and the expected locale of evidence, we are satisfied that discovery should not be permitted on the claim of electronic surveillance when determining whether to honor another state's request for a witness under the uniform act.

Petitioners rely upon 18 United States Code section 3504 in support of their claim that they are entitled to discovery of any electronic surveillance in this proceeding. The section provides in pertinent part: "(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—[¶] (1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act."

The section by its terms is limited to proceedings in courts and agencies of the United States. This should be contrasted with 18 United States Code section 2515 which is expressly made applicable to "a State, or a political subdivision thereof." (See fn. 3.) Section 3504 is a procedural statute dealing with the time to move to exclude unlawfully obtained evidence. While to a large extent Congress has preempted the field of electronic surveillance (*People* v. *Conklin, supra,* 12 Cal.3d 259, 263 et seq.), there is no showing that Congress has intended to require the states to follow federal criminal procedure as to unlawfully obtained evidence. *Cruz* v. *Alexander* (2d Cir. 1982) 669 F.2d 872, 874-875, involving claimed electronic surveillance, held that states were not required to comply with the provisions of section 3504.

The alternative writ is discharged, and the peremptory writ is denied.

Mosk, J., Richardson, J., Newman, J., Kaus, J., and Reynoso, J., concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I concur with the result and much of the reasoning of the court's opinion. I write separately to address my concerns about two aspects of the decision.

In evaluating the validity of the uniform act in light of petitioners' assertion that it impermissibly infringes upon rights protected by article I, section 1 of our state Constitution, I would employ the strict scrutiny test. (See *Committee to Defend Reproductive Rights* v. *Myers* (1981) 29 Cal.3d 252, 289 [172 Cal.Rptr. 866, 625 P.2d 779] (conc. opn. of Bird, C. J.).) That test envisions a two-pronged inquiry: (1) does the challenged governmental action serve a compelling state interest and (2) does it infringe upon the protected rights by the least intrusive means?

The uniform act is clearly valid when measured by this standard. As the majority recognizes, the act serves a compelling interest. (*Ante,* p. 172.) The *sine qua non* of the act is its provision for reciprocity among the adopting states. (See Pen. Code, §§ 1334.2, 1334.3.) This feature makes possible the testimony of out-of-state witnesses in California courts, thus enabling inhabitants of this state to vindicate their basic rights and claims. Moreover, since the act compels a person in California to attend proceedings in other states only when his or her presence is "material and necessary" and no "undue hardship" will result, the act satisfies the second half of the strict scrutiny test as well. (See *id.,* § 1334.2.)

A majority of this court would seem to prefer the use of a lesser standard, asserting that the uniform act merely has an "incidental" or "temporary" effect on the exercise of protected rights. (*Ante,* at p. 172.) I do not agree with this conclusion. Since I have previously expressed my reservations about the creation of an artificial distinction between incidental and appreciable infringements on fundamental rights, I need not reiterate them here. (See *Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at p. 287 et seq. (conc. opn.).) However, it *is* necessary to point out the illogic of extending that already flawed analysis to the present situation.

The majority invokes its incidental impact theory on the ground that the act's interference with article I, section 1 rights is merely "temporary." But many—if not most—governmental actions coming under article I, section 1 attack can be said to be temporary. Would a statute which authorized the jailing of an individual for a week without probable cause be subject to a less demanding test than strict scrutiny on the basis that the detention was merely temporary? Could the government avoid strict scrutiny of a wholesale electronic surveillance of our

populace, if the operation were limited to one week? One month? One year?

Prior to the decision in this case, the court's use of the "incidental effect" exception to the strict scrutiny test had been limited to cases where governmental actions had what was considered to be a secondary impact upon protected rights. Today's majority cannot legitimately claim that the uniform act has such an "incidental" effect upon article I, section 1 rights. Instead, the court blithely extends the incidental impact exception to include direct but temporary infringements of basic rights without pausing to consider the full import of what is being done. That expansion strikes me as ill-advised and dangerous. Further, it is not amenable to a principled application. I do not join in that language of this court's opinion.

The majority properly rejects petitioners' contention that the government has the duty to affirm or deny the use of electronic surveillance at a rendition hearing held pursuant to the uniform act. Such an affirm-or-deny procedure is not required of California courts by federal law. (*Cruz* v. *Alexander* (2d Cir. 1982) 669 F.2d 872.) Nor are the interests of state law sufficient to compel our courts to apply California's Invasion of Privacy Act at a rendition hearing. (See Pen. Code, § 630 et seq.) The evidence obtained by electronic surveillance (if any) is to be used in Florida courts exclusively. California's judicial contacts with those Florida proceedings are too fleeting and ministerial in nature to justify applying our statutes to the gathering of evidence to be used in another state.