Filed 6/15/15  P. v. Valiente CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B257032 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA400361) |
| v. | |
| VLADIMIR OSVALDO VALIENTE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Affirmed.

Vladimir Osvaldo Valiente, pro. per.; and Linn Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Vladimir Osvaldo Valiente was convicted following a jury trial of attempted murder with related firearm-use and criminal street gang enhancements. Valiente's appellate counsel filed an opening brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, which raised no issues and asked this court to independently review the record. At our invitation Valiente has filed a 32-page brief identifying several purported errors committed by the trial court. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1 *Information*

In April 2013 an information charged Valiente with the attempted willful, deliberate and premeditated murder (Pen. Code, §§ 187, subd. (a), 664)[1] of Marelin Martinez with special allegations he had committed the crime to benefit a criminal street gang (§ 186.22, subd. (b)) and a principal had personally used and discharged a firearm causing great bodily injury (§ 12022.53, subds. (b), (c), (d) & (e)(1)).

The jury was unable to reach a verdict at Valiente's first trial, and a mistrial was declared. The case was retried to a jury in February 2014.

2. *Requests To Substitute New Counsel*

Edward Esqueda represented Valiente as retained counsel at his first trial. Following the mistrial, Edqueda's request to be appointed as Valiente's counsel pursuant to *Harris v. Superior Court* (1977) 19 Cal.3d 786 was denied. Esqueda then told the court he would represent Valiente on a pro bono basis.

Immediately before the start of voir dire at the second trial (day 59 of 60), the trial court received Valiente's written request that Esqueda be relieved and new counsel be appointed, specifically deputy public defender Laurie Jones. When the court inquired about his reason for changing lawyers, Valiente replied he was dissatisfied with Esqueda's failure to obtain certain discovery. The court observed that Jones was not present in court and had not moved to replace Esqueda as Valiente's counsel. The court also pointed out that Esqueda's efforts in the first trial had produced a positive outcome.

---

[1]     Statutory references are to this code unless otherwise indicated.

In addition, the court reminded Valiente that he had refused the court's offer to appoint the public defender to represent him, at which point Esqueda had agreed to represent Valiente on a pro bono basis. Esqueda interjected that Valiente's family had since retained him on a sliding scale.

The trial court denied Valiente's request for new counsel as untimely and a ploy to stall the case. The trial court explained the victim, Marelin Martinez, was in custody for having failed to appear at the first trial in response to the People's subpoena. Apparently she and her family had been subjected to gang intimidation in relation to this case. Valiente had not expressed a desire for new counsel before Martinez was taken into custody. A delay at this point in the proceedings, the court observed, either would cause Martinez to remain in custody for a longer period of time or, if released, would exacerbate her fear of testifying.

On February 4, 2014 Valiente again expressed to the trial court his dissatisfaction with Esqueda as counsel. Deputy public defender Jones was in the courtroom. In response to the court's inquiry, Jones stated she was not prepared to proceed immediately to trial if she were appointed to represent Valiente. The court again denied Valiente's request for new counsel as untimely.

3. *Summary of Trial Evidence*

Martinez testified she was sitting outside her apartment complex on the evening of June 17, 2012 when Valiente, who had previously told Martinez he was a Mara Salvatrucha 13 (M.S. 13) gang member, approached in a wheelchair. Valiente was accompanied by three men. Because Martinez belonged to Rebels 13, a rival gang, Valiente told his confederates that she was the enemy and ordered them to shoot her. Only one of the men, Hugo Beltran,[2] was armed; he pointed his gun at Martinez's face. Martinez pushed the gun down; and Beltran fired, shooting her in the stomach. Valiente instructed Beltran to shoot Martinez again and kill her, but Beltran was interrupted by

---

[2]     Hugo Beltran was charged as a codefendant. His case was resolved prior to trial.

3

Martinez's father. Valiente and his confederates fled. Martinez was treated at the hospital and released with a bullet lodged near her spine.

Martinez explained she had not cooperated with police initially or appeared in court at the first trial because she was frightened. She still feared M.S. 13 would harm her family. However, Martinez decided to cooperate with police after Valiente threatened her father on June 29, 2012. Additionally, Los Angeles Police Officer Bill Wilson, the investigating officer, told Martinez on July 2, 2012 that she and her family would be placed in a witness protection program if she testified. According to Martinez, she and her family had not entered the program at the time of her testimony; they still lived at the same apartment complex.

Several residents of the apartment complex, including Martinez's father and brother, had corroborated Martinez's account of the shooting to the police. At trial, however, they either recanted or claimed they could not recall certain statements they had made to the officers. All of these witnesses expressed fear of retaliation by the M.S. 13 gang. None identified Valiente as having ordered the shooting.

Officer Wilson testified on cross-examination that he told Martinez several times he could arrange for her and her family to be relocated and their rent paid for a period of time. The offer was not conditioned on Martinez's agreement to cooperate with the police. Martinez said she would think about the offer; her father declined it.[3]

Los Angeles Police Officer Debbie Monico testified as the People's gang expert. She described the history and primary activities of the M.S. 13 gang and its rivalry with the Rebels 13. After reviewing police reports and officers' statements, Monico opined Martinez was a member of the Rebels 13 gang and Valiente was a member of the M.S. 13 gang. Her opinion was also based on an in-court examination of photographs of Valiente's tattoos. In response to a hypothetical attempted murder committed under circumstances similar to this case, Monico testified the crime would have been intended

---

[3] The prosecutor and Esqueda told the trial court they were unaware of Officer Wilson's relocation offer.

4

to benefit the M.S.13 gang. On cross-examination Monico acknowledged she had never had any personal contact with Valiente and there were no field interview reports identifying him as a gang member and no information in the gang database that he had committed a gang-related crime.

4. *Motion for a Mistrial*

Following Martinez's testimony Esqueda moved for a mistrial, arguing the offer to relocate Martinez and her family prior to trial had not been disclosed to the defense as required by *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (*Brady*).) At an evidentiary hearing Officer Wilson testified that on numerous occasions he had discussed with Martinez and her father the possibility of placing them in a witness protection program for their safety, telling them the district attorney's office would pay their moving expense and rent for a limited period. Both Martinez and her father ultimately rejected the offer although Martinez also said she would think about it. Wilson believed the last time he had discussed the possible relocation with Martinez was when he delivered the subpoena for her to testify. Wilson had not spoken to Martinez about relocating since she had been taken into custody for failing to comply with the subpoena for the first trial. Wilson had never given any funds to Martinez or her father.

At the conclusion of the hearing the trial court denied the motion, finding that Valiente had suffered no prejudice from the People's failure to disclose the relocation offer before trial because the information was made known during trial. The court agreed with the prosecutor that, if the offer were intended as a reward for cooperating with the People, Martinez had certainly rejected it by refusing to respond to the subpoena to testify at trial.

5. *Sentencing Hearing*

After denying Valiente's motion for a new trial, the trial court imposed an aggregate state prison term of life for attempted premeditated murder, plus a consecutive term of 25 years to life for the section 12022.53, subdivisions (d) and (e), firearm-use enhancement. Sentencing on the remaining firearm-use enhancements was stayed.

5

## DISCUSSION

We appointed counsel to represent Valiente on appeal. After examination of the record counsel filed an opening brief in which no issues were raised. On December 11, 2014 we advised Valiente he had 30 days within which to personally submit any contentions or issues he wished us to consider. After granting several extensions of time, on March 16, 2015 we received a typed 32-page supplemental brief in which Valiente challenged his conviction on multiple grounds: The evidence is insufficient to support the conviction and the gang enhancement; the court erred in denying Valiente's request to substitute counsel; the court erred in denying a mistrial following Martinez's testimony; and the court committed prejudicial error in compelling Martinez to testify and admitting Martinez's hearsay testimony.

1. *Substantial Evidence Supported the Conviction and the Gang Enhancement*

There was sufficient evidence to support the attempted murder conviction based on Martinez's testimony alone, which was neither physically impossible nor inherently improbable. (*People v. Young* (2005) 34 Cal.4th 1149, 1181; see *People v. Zamudio* (2008) 43 Cal.4th 327, 357; *People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

With respect to the gang enhancement, Valiente challenges the sufficiency of the evidence to prove the offense was committed for the benefit of a criminal street gang, focusing on what he claims was a lack of evidence he was an active member of M.S. 13 at the time of the shooting. Expert testimony that Valiente was an active gang member and Valiente's admission of gang membership to Martinez in 2012 constituted sufficient evidence that he was an active gang member. (See, e.g., *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1331 [sufficient evidence of active gang membership where gang expert relied on, among other things, defendant admitting he was gang member after arrest and gang tattoo over defendant's eyebrow]; *People v. Williams* (2009) 170 Cal.App.4th 587, 626 [sufficient evidence that defendant was active gang member based on, among other things, defendant's gang tattoos and his prior admission of gang membership].) And Martinez's testimony that Valiente had said she was the enemy before ordering his confederates to shoot her, coupled with the expert's opinion regarding

6

the significance of the crime within the gang culture, was more than sufficient to establish the requisite elements of the section 186.22, subdivision (b), enhancement.

2. *Denial of the Request for Substitute Counsel Was Not an Abuse of Discretion*

The denial of Valiente's request to relieve counsel as untimely was not an abuse of discretion. (*People v. Verdugo* (2010) 50 Cal.4th 263, 311[court has discretion to deny motion if untimely, that is, if discharge "'will result in "disruption of the orderly processes of justice"'"].) Valiente's second jury trial was imminent, and there was no indication his proposed substitute counsel was available. Discharging Esqueda, therefore, would have left Valiente unrepresented; and he had never expressed a desire to represent himself. Additionally, the proceedings would have been significantly delayed to enable new counsel to become familiar with the evidence and the record of the first trial. Finally, in assessing timeliness, the court properly considered that the delay in changing counsel would either prolong the victim's stay in custody or intensify her reluctance to testify. (See *People v. Maciel* (2013) 57 Cal.4th 482, 512-513.)

3. *The Motion for a Mistrial Was Properly Denied*

Valiente contends the trial court erred in failing to grant his motion for a mistrial for *Brady* error—the People's failure to timely disclose the offer to relocate Martinez, impeachment evidence favorable to him. In *Brady* the United States Supreme Court held that due process requires the People to disclose to the defense evidence that is both favorable to the defendant and material to either the issue of guilt or punishment. (*Brady, supra,* 373 U.S. at p. 87; see also *In re Sassounian* (1995) 9 Cal.4th 535, 543.) "Evidence is 'favorable' if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses." (*In re Sassounian*, at p. 544.) "Thus, a true *Brady* violation occurs only when three conditions are met: '. . . The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' [Citation.] Under this standard prejudice focuses on 'the materiality of the evidence to the issue of guilt or innocence.' [Citation.] In the case of impeachment evidence, materiality requires more than a showing that 'using the suppressed evidence to

7

discredit a witness's testimony "might have changed the outcome of the trial." [Citation.]'  Rather, the evidence will be held to be material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  (*People v. Lucas* (2014) 60 Cal.4th 153, 274.)

The record fails to demonstrate the relocation offer was suppressed by the People, within the meaning of the *Brady* rule, because it was disclosed during Martinez's and Officer Wilson's testimony at trial.  (*People v. Lucas, supra,* 60 Cal.4th at p. 274 ["'[e]vidence that is presented at trial is not considered suppressed, regardless of whether or not it had previously been disclosed during discovery'"].)  Furthermore, as the trial court observed, Martinez and her father did not accept the relocation offer.  Therefore, while perhaps relevant, the offer was not a basis for impeaching Martinez's credibility on the theory advanced by the defense—that she had been induced by the offer of protection to testify falsely against Valiente.  Instead, its impeachment value was limited to undermining her direct testimony that she was afraid of retaliation by the M.S. 13 gang.  Finally, the record shows Esqueda vigorously cross-examined Martinez on her failure to accept the relocation offer, notwithstanding her purported fear of the gang harming her and her family.  Because Valiente was able to make effective use of the relocation offer at trial, there was no prejudice stemming from its untimely disclosure.

4.  *Martinez Was Properly Compelled To Testify*

Martinez testified she was currently in custody after failing to comply with a subpoena in this case and acknowledged, if she refused to testify, she would be found in violation of probation on two misdemeanor cases.  According to Valiente, Martinez's testimony was therefore improperly coerced and tainted.

As the victim of the attempted murder charge, Martinez was a material witness who had failed to comply with the People's subpoena.  The People invoked section 1332, which permits the court to order a reluctant material witness to enter into an undertaking to appear and testify and, in appropriate cases, to be taken into custody.  (§ 1332; see *People v. Louis* (1986) 42 Cal.3d 969, 992-993; *In re Francisco M.* (2001) 86 Cal.App.4th 1061, 1064-1065 [innocent individual with knowledge of a crime

8

properly detained without bail as a material witness]; *People v. Roldan* (2012) 205 Cal.App.4th 969, 981 [same].)  Given Martinez's failure to appear at the first trial, the court had few options to secure her appearance.[4]  The record shows Martinez was cross-examined extensively; and nothing suggests she testified falsely because she was compelled to appear at trial.

 5.  *Martinez's Challenged Testimony Was Properly Admitted*

 On direct examination Martinez testified she had decided to cooperate with the police because she was afraid of retaliation by Valiente and his confederates.  The prosecutor asked her, "Did anyone tell you whether or not something happened to them that caused you—"  Martinez interrupted and answered, "Oh, yes.  My father."  When the prosecutor asked Martinez what her father had told her, attorney Esqueda objected.  In overruling the objection the trial court admonished the jury that Martinez's answer was not being admitted "for the truth of the matter asserted, [but] only to explain why this witness did what she did."  Martinez then testified her father had been told by Valiente that, if he went to the police, Valiente and his confederates "would finish the job."

 Valiente now argues Martinez's testimony concerning his purported threat to her father constituted inadmissible hearsay.[5]  As the court correctly determined, the evidence was properly admitted for a nonhearsay purpose—to explain Martinez's state of mind and motivation for deciding to cooperate with the police.  (See *People v. Thornton* (2007) 41 Cal.4th 391, 447 ["""'Whenever an utterance is offered to evidence state of mind [that] ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible. . . .'"" [Citation.]  Such evidence is not hearsay."].)

---

[4] Martinez was represented by counsel and, following her testimony, was released from custody and placed under house arrest on electronic monitoring.

[5] "'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200.)  Subject to certain exceptions, hearsay evidence is generally inadmissible.  (Evid. Code, § 1201.)

None of the claims asserted by Valiente in his supplemental brief has merit. In addition, we have examined the record and are satisfied Valiente's appellate attorney has fully complied with the responsibilities of counsel and no arguable issue exists. (*Smith v. Robbins* (2000) 528 U.S. 259, 277-284 [120 S.Ct. 746, 145 L.Ed.2d 756]; *People v. Kelly* (2006) 40 Cal.4th 106, 112-113; *People v. Wende, supra,* 25 Cal.3d at p. 441.)

## DISPOSITION

The judgment is affirmed.


                                        PERLUSS, P. J.

We concur:



        ZELON, J.



        STROBEL, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.