Filed 12/9/16 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>CHUNCEY TARAE GARCIA,<br><br>　　Defendant and Appellant. | G050268<br><br>(Super. Ct. No. 13WF0628)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on October 31, 2016, be modified as follows:

1.  On page 6, footnote 6 is deleted and replaced with the following new footnote 6:

> [6] The Attorney General argues that the case must be remanded to allow the court to properly impose a sentence on the pimping count and then stay execution of the sentence. Defendant does not object to the Attorney General's request. We will remand the case to the trial court to correct defendant's sentence by imposing a sentence on the pimping count, and then staying execution of that sentence.

2.  On page 19, the disposition paragraph is deleted and replaced with the following new disposition paragraph:

> The judgment is affirmed. The matter is remanded to the
>
> trial court to correct defendant's sentence by imposing a

sentence on the pimping count (count 2), and then staying execution of that sentence.

These modifications do not effect a change in the judgment. The petition for rehearing is DENIED.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

IKOLA, J.

2

Filed 10/31/16; pub. order 11/15/16 (see end of opn.) (unmodified version)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHUNCEY TARAE GARCIA,<br><br>    Defendant and Appellant. | G050268<br><br>(Super. Ct. No. 13WF0628)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, Alana Butler and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Defendant Chuncey Tarae Garcia was convicted of human trafficking and pimping a minor. Defendant's 14-year-old victim (the minor) did not testify at defendant's trial. Instead, the videotape of the minor's conditional examination was played for the jury. Defendant argues that his constitutional rights to confrontation, cross-examination, and due process were violated. We disagree, and affirm the judgment.

The trial court did not err in releasing the minor from commitment as a material witness, under Penal Code section 1332, after permitting her conditional examination to be taken. Further, the court did not err in determining the minor was unavailable at trial, and in denying defendant's request for the appointment of an expert witness to review the minor's records and the recommendation of the minor's therapist.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

In February 2013, the minor was 14 years old, and living in Scottsdale, Arizona. She ran away from home, and obtained a job at a strip club by claiming she was 19 years old.

At the club, the minor met Cierra Robinson. Robinson told the minor she could make more money working as a prostitute than she could as a stripper. The minor told Robinson she did not want to engage in prostitution.

A couple of days later, Robinson introduced the minor to defendant, whom Robinson called Slim or King Slim. Defendant told the minor she was "stunning" and "beautiful," and he had a great opportunity for her that would involve talking to guys on the phone. Defendant drove the minor and Robinson to a hotel.

Defendant was initially nice and sweet to the minor. Defendant gave her alcohol and marijuana, and told her he had a money-making opportunity for her.

2

Defendant told the minor she was going to work for him as a prostitute. Defendant told her she was not allowed to leave and could not tell anyone else. The minor was scared, and afraid defendant would hit her. She did not try to leave because she "was terrified."

Defendant gave the minor a notebook with the prices for various sex acts and what to say when answering the phone.[1] Defendant told her to smile and wave at people on the street, and that when they pulled over, she would be paid to have sex with them. Defendant also instructed her not to look at or speak to other African-American men,[2] and not to call defendant anything other than Daddy or Pimpin. Defendant told the minor that if she violated the rules, she would be "in trouble" and defendant would hit her.

While still in Arizona, defendant provided the minor with a cell phone,[3] and caused her phone number and picture to be posted on Web sites.[4] She received calls in response to the online advertisements, but avoided the offers to engage in sex for money by telling defendant that the callers were African-American men or pimps. She was afraid of defendant, and had seen him hit Robinson. The minor never tried to use her cell phone to call the police, and even when defendant left her alone with Baby, another girl working for defendant as a prostitute, the minor did not try to leave or to ask someone for help.

Two or three days after the minor met defendant, they drove to California with Robinson and Baby. The minor did not want to work as a prostitute, but she was afraid and felt as if she had no choice. She consumed alcohol and smoked marijuana purchased by defendant.

---

[1] Pages from the notebook were admitted at trial as exhibit No. 2.
[2] Defendant is African-American.
[3] A photograph of the cell phone was admitted at trial as exhibit No. 3.
[4] The Web site postings were admitted at trial as exhibit No. 4.

The minor worked as a prostitute while in Orange County. She walked the streets within boundaries set by defendant so he would know where she was. She was required to regularly check in with defendant, and to text defendant when she had a customer and when she was done. The minor sometimes took her customers to a hotel room paid for by defendant, and sometimes had her "dates" in a car.

The minor gave all the money she earned by working as a prostitute to defendant. Each of the girls was expected to earn $200 per day; if she did not, she would not be allowed to eat dinner.

On two occasions, the minor had sex with defendant. Although she did not want to do so, she was too scared to tell him no or stop it from happening.

About 2:00 a.m. on March 1, 2013, Garden Grove Police Officer Michael Viscomi stopped the car that defendant was driving. The minor was in the backseat behind the driver's seat. Viscomi noticed that the minor appeared very young, although she initially lied about her name and age. After another officer moved the minor away from defendant, Robinson, and Baby, the minor gave the officer her mother's name and phone number.

The minor was arrested. She began to cry in the backseat of the patrol car, and told Viscomi she lied to him because defendant had told her that he would hit her in the face if she "crack[ed]." From the police station, the minor was transported to the Orangewood Children and Family Center, from which she ran away on at least two occasions.

Defendant told the police he went by the name "Slim." When stopped by Viscomi, defendant had $353 in cash; none of the girls had any money. In the hotel room that defendant was renting, the police found a laptop computer with a user account for "King Slim, the Boss." The computer also had a file containing 19 photographs of the minor in sexually suggestive poses. In its browsing history, the computer had the online advertisements featuring the minor.

4

Viscomi questioned defendant after he had been stopped. Defendant said he was in California to take care of his traffic tickets, to visit his children in Los Angeles, and to return to caring for his grandmother. Defendant told Viscomi he had met the minor through Robinson, who was working with her at a strip club. Defendant also stated the minor had told him she was 19 years old, and he thought she must be because she could not otherwise have worked in a strip club. Defendant was suspicious because the minor spoke and acted younger, but she continued to tell him she was 19 years old.

Defendant admitted paying for the hotel rooms, and paying for the minor's cell phone. Defendant denied knowing anyone was engaged in prostitution, or getting money from the minor. Defendant denied forcing the minor to do anything she did not want to do, and denied that she gave him any money over the last few days.

On April 30, 2013, a petition for commitment of the minor, pursuant to Penal Code section 1332, was filed under seal. The requested order was signed and filed under seal on the same day. The minor was held in custody at juvenile hall. On May 2, the prosecutor filed a motion for conditional examination of a material witness, which was granted. The conditional examination was conducted on May 17. At the conclusion of the conditional examination, the section 1332 hold was lifted, and the minor was ordered to return to court on June 20, which was the date then scheduled for trial.

At the request of defendant, the trial was continued multiple times, and a jury was ultimately sworn in on March 3, 2014. The minor did not appear to testify at trial. The trial court found the minor was unavailable as a witness, and a videotape of her testimony from the conditional examination was played for the jury.

At trial, the prosecution offered the testimony of an expert witness regarding pimping and human trafficking. The expert's testimony was consistent with the story the minor had told.

Defendant was convicted of human trafficking of a minor (Pen. Code, § 236.1, subd. (c)(1)), and pimping a minor under 16 years of age (*id.*, § 266h,

5

subd. (b)(2)).  The jury found true that the human trafficking was accomplished by means of force or fear.  (*Id.*, § 236.1, subd. (c)(2).)[5]  Defendant admitted the truth of allegations of two prison priors under Penal Code section 667.5, subdivision (b).

The trial court sentenced defendant to 17 years to life:  15 years to life for the human trafficking offense, and one year for each prison prior.  The court stayed sentencing on the pimping count, pursuant to Penal Code section 654.[6]

DISCUSSION

I.

*THE TRIAL COURT DID NOT ERR IN RELEASING THE MINOR FROM COMMITMENT AS A MATERIAL WITNESS.*

Defendant argues that his rights to confrontation, cross-examination, and due process were violated because the trial court ordered a conditional examination of the minor, rather than continuing to detain her pursuant to Penal Code section 1332 until the time of trial.

A.

*Procedural Background*

Shortly after defendant's preliminary hearing, the trial court granted the prosecution's petition for an order committing the minor pursuant to Penal Code

---

[5]  The jury was unable to reach a verdict on a third count of forcible rape. The trial court declared a mistrial, and then granted the prosecution's motion to dismiss that count.

[6]  The Attorney General argues that the case must be remanded to allow the court to properly impose a sentence on the pimping count and then stay execution of the sentence.  The Attorney General did not file a cross-appeal, and therefore cannot now claim error in connection with defendant's appeal.  (Code Civ. Proc., § 906; *Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439; *Building Industry Assn. v. City of Oceanside* (1994) 27 Cal.App.4th 744, 758, fn. 9.)  This determination is without prejudice to a proper request to the trial court for a correction of the sentence after the remittitur issues.

6

section 1332.[7]  The court found the minor to be a material witness, who would not return to testify at trial unless an undertaking was provided, and that it was impossible for the minor to provide such an undertaking.

The prosecution moved for an order for a conditional examination of the minor.  "When a material witness for the defendant, or for the people, is about to leave the state, . . . the defendant or the people may apply for an order that the witness be examined conditionally."  (Pen. Code, § 1336, subd. (a).)  Counsel for the minor had advised the trial court of the desire to have the minor "released as quickly as possible."  Defendant's counsel asked that the court continue to hold the minor pursuant to Penal Code section 1332, rather than conduct a conditional examination.  Counsel argued that he could not adequately prepare for a conditional examination in the time provided by the court, which would deprive defendant of his right of cross-examination.  The court granted the order for a conditional examination, which was scheduled for 10 days after the hearing.

---

[7]  In relevant part, Penal Code section 1332 provides:  "(a) . . . [W]hen the court is satisfied, by proof on oath, that there is good cause to believe that any material witness for the prosecution or defense, whether the witness is an adult or a minor, will not appear and testify unless security is required, at any proceeding in connection with any criminal prosecution . . . , the court may order the witness to enter into a written undertaking to the effect that he or she will appear and testify at the time and place ordered by the court or that he or she will forfeit an amount the court deems proper.  [¶] (b) If the witness required to enter into an undertaking to appear and testify, either with or without sureties, refuses compliance with the order for that purpose, the court may commit the witness, . . . if a minor, to the custody of the probation officer or other appropriate agency, until the witness complies or is legally discharged.  [¶] (c) When a person is committed pursuant to this section, he or she is entitled to an automatic review of the order requiring a written undertaking and the order committing the person, by a judge or magistrate having jurisdiction over the offense other than the one who issued the order.  This review shall be held not later than two days from the time of the original order of commitment.  [¶] (d) If it is determined that the witness must remain in custody, the witness is entitled to a review of that order after 10 days."  (Pen. Code, § 1332, subds. (a)-(d).)

7

B.

*Standard of Review*

Neither party addresses the standard of review we should apply in this case. We have found no published case setting forth the standard of review for an order releasing a material witness from commitment pursuant to Penal Code section 1332. We believe, based on analogous issues in other cases, that the order should be reviewed for abuse of discretion.

In *People v. Bunyard* (2009) 45 Cal.4th 836, 851, the Supreme Court concluded that the trial court's decision to release a material witness on his or her own recognizance should be reviewed for abuse of discretion: "[T]he decision to keep a material witness in custody involves balancing that right [of confrontation] against the substantial due process right of the witness, who has not been charged with a crime, to not be unreasonably incarcerated. . . . [T]he trial court is in a better position than an appellate court to ascertain whether and to what extent a witness is a flight risk, and the appropriate measures to reduce that risk. This determination involves in part an observation of the witness's credibility and demeanor that the trial court is uniquely in a position to make. Therefore, although we conduct independent review in the sense that we independently apply an 'objective, constitutionally based legal test' to certain facts [citation], we also give due deference to the trial court's determination of a witness's flight risk, and will second-guess that determination only when it is clear from the record that it was objectively unreasonable."

Further, in *In re Francisco M.* (2001) 86 Cal.App.4th 1061, 1079, the appellate court held that the trial court has discretion to determine whether to require a witness to post security under Penal Code section 1332 to secure his or her attendance at trial. Because the trial court must consider the same factors when any detention is reviewed two days later, and then every 10 days thereafter (Pen. Code, § 1332, subds. (c),

8

(d); *In re Francisco M.*, *supra*, at p. 1079), the abuse of discretion standard should also apply to the trial court's "consider[ation of] any relevant changes in circumstances in determining whether to continue the detention, including whether the witness credibly has changed his attitude toward appearing at trial, or toward accepting a lesser, feasible alternative to custody" (*In re Francisco M.*, *supra*, at p. 1079).

## C.

### *Analysis*

We begin our analysis by reviewing the basic constitutional principles at issue. "The confrontation clauses of both the federal and state Constitutions guarantee a criminal defendant the right to confront the prosecution's witnesses. [Citations.] That right is not absolute, however. An exception exists when a witness is unavailable and, at a previous court proceeding against the same defendant, has given testimony that was subject to cross-examination. Under federal constitutional law, such testimony is admissible if the prosecution shows it made 'a good-faith effort' to obtain the presence of the witness at trial." (*People v. Cromer* (2001) 24 Cal.4th 889, 892; see *Crawford v. Washington* (2004) 541 U.S. 36, 53-54.)

Evidence Code section 1291, subdivision (a) creates an exception to the confrontation right for prior recorded testimony: "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: [¶] . . . [¶] (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing." (Evid. Code, § 1291, subd. (a)(2).) A witness is unavailable if he or she is "[a]bsent from the hearing and the court is unable to compel his or her attendance by its process." (Evid. Code, § 240, subd. (a)(4).)

9

The decision to detain a material witness involves weighing important competing rights. "Article I, section 10 of the California Constitution guarantees '[w]itnesses may not be unreasonably detained.' This constitutional protection is balanced against '"[t]he duty [of all citizens] to disclose knowledge of [a] crime . . . ."' [Citation.] This duty is considered to be '"so vital that one known to be an innocent may be detained, in the absence of bail, as a material witness. [Citations.]"' [Citation.] [¶] To enforce this duty, [Penal Code] section 1332 allows for the incarceration of a person determined to be a material witness to secure his or her presence at trial." (*In re D. W.* (2004) 123 Cal.App.4th 491, 497-498.)

"The unique posture of the material witness counsels special concern that the procedures leading to the determination whether he should be detained are fair. Certainly the witness's right under article I, section 10 [of the California Constitution], not to be 'unreasonably detained,' requires procedural safeguards allowing the interests of the witness to be heard in conjunction with the interests of the state. Further, the question whether and how long to detain a witness consistent with this right cannot be determined according to mechanical rules. As with the scope of other constitutional provisions, the decision must be based on all the relevant circumstances of the particular case." (*In re Francisco M.*, *supra*, 86 Cal.App.4th at pp. 1075-1076.) The unjustified deprivation of a material witness's liberty is a violation of the due process clauses of the federal and state Constitutions. (*In re D. W.*, *supra*, 123 Cal.App.4th at p. 498.)

In *In re Francisco M.*, *supra*, 86 Cal.App.4th at page 1076, the appellate court identified a nonexclusive list of factors for the trial court to consider in deciding whether to detain a material witness pursuant to Penal Code section 1332, to protect "the interests of the various parties—the prosecution, the defendant in the underlying criminal case, and the witness." Those factors are as follows: "(1) The nature of the charges in the underlying criminal prosecution. The more serious the charges, the weightier the state's interest in ensuring the witness's attendance. [¶] (2) The nature of the witness's

10

proposed testimony. . . . To the extent possible, the court should consider the importance of the individual witness to the prosecution case. [Citation.] [¶] (3) The length of the proposed detention. It is true that a '[d]etention is not unreasonable . . . merely because it may be prolonged.' [Citation.] However, the longer the expected detention, the greater the showing required by the state to justify it. . . . [¶] (4) Evidence relevant to whether the witness will or will not appear and testify. Such considerations may include employment, residence, and other community ties. It may also include the witness's prior statements and conduct. . . . [¶] (5) The age and maturity of the witness. Detention of a minor witness requires greater scrutiny than that of an adult. . . . [¶] (6) The harm to the witness and his family flowing from incarceration. . . . There are perhaps countless ways incarceration may affect the witness. The purpose of detention is not to punish for a prior unwillingness to cooperate, though certainly the extent of unwillingness is an appropriate factor to consider, but to ensure that the witness will be present at trial. Punishment of the witness not being a factor, the prejudice to the witness and his family must be considered. [¶] (7) The witness's financial resources. Should security be required, the amount must be reasonable, calculated to secure the witness's appearance at trial. . . . [¶] (8) The circumstances of any continuance of the underlying prosecution that will prolong the incarceration. . . . As indicated by *Ex Parte Dressler* [(1885)] 67 Cal. 257, prolonging a detention by a continuance of the trial without adequate cause might in itself violate article I, section 10 of the California Constitution. [¶] (9) Whether steps short of incarceration are feasible and adequate to protect the interests of the prosecution, the witness, and the defendant in the underlying prosecution. . . . [T]he court may consider whether circumstances exist in which a conditional examination may be held under [Penal Code] section 1335 et seq. It may well be that, because of currently existing rules, resorting to a conditional examination will prove problematic. There must first be an adequate showing justifying a conditional examination under [Penal Code] sections 1335 and 1336. Also, in many instances, a detained material witness can be expected in his

11

testimony to recant earlier statements allegedly given to law enforcement. If a conditional examination is conducted, only the witness would testify. With respect to use of the conditional examination at trial, the witness would be a hearsay declarant. If the witness, upon being confronted with the prior inconsistent statements at the conditional examination, adopted and reaffirmed them, the jury at the trial could consider the statements for their truth. [Citation.] However, if the witness denied the prior statements, any such statements later introduced at trial could be considered only as relevant to impeach the witness as a hearsay declarant. [Citation.] The statements could not be used to prove the truth of the matter asserted in the statements. [Citations.] Since the inconsistent statements could not be considered to prove the guilt or innocence of the accused, use of a conditional examination may be inadequate to serve the interests of justice. The problem might be resolved if the Legislature were to amend the Evidence Code to permit a detained witness's prior inconsistent statements to be considered for their truth at trial, assuming the witness was properly confronted with them at the conditional examination under Evidence Code section 770, subdivision (a)." (*In re Francisco M.*, *supra*, at pp. 1076-1079, fns. omitted.) The trial court must consider, at the two-day review hearing, and then at a hearing every 10 days thereafter, whether, because of "any relevant change in circumstances," the detention should be continued, ended, or revised. (*Id.* at p. 1079.)

In this case, the trial court fully considered all relevant factors in deciding to commit the minor, and then to release her from Penal Code section 1332 commitment and order a conditional examination. The court did not abuse its discretion, and we therefore affirm the order releasing the minor from commitment.

Defendant contends the list of factors set forth in *In re Francisco M.* is not the proper test. Rather, defendant suggests that in *People v. Bunyard*, *supra*, 45 Cal.4th at pages 851 and 854, the court focused only on the length of the witness's detention and whether the witness had a strong incentive to flee. When considered within the specific

context of this case, we do not agree that focusing on those two factors would require reversal. First, while it is true that at the time of the conditional examination, the minor had only been subject to commitment for 17 days, we do not agree that this is a de minimis time, in light of the minor's young age and need for psychological treatment. Further, if we were to look at the time the trial actually started, the minor would have been subject to commitment for more than 10 months. Second, the entire point of the conditional examination was to allow the minor to "flee the jurisdiction," in the sense that she would be returning to her home in Arizona to obtain necessary therapy and treatment.

Defendant cites *People v. Roldan* (2012) 205 Cal.App.4th 969, 981, for the proposition that the minor's rights would not have been violated by a 60-day commitment pursuant to Penal Code section 1332. We believe that case is distinguishable. After one of the victims of a shooting testified at the defendant's preliminary hearing, the victim was released to the federal authorities and deported to Mexico. (*People v. Roldan*, *supra*, at p. 976.) The trial court permitted the preliminary hearing testimony to be read to the jury, based on the court's finding that the victim was unavailable. (*Id.* at pp. 977-978.) This court reversed the guilty verdict because the prosecution had failed its duty to "'"use reasonable means to *prevent a present witness from becoming absent*." [Citation.] If the prosecution fails in this latter duty, it does not satisfy the requirement of due diligence. [Citation.]' [Citations.]" (*Id.* at p. 980.) Significantly, one of the specific ways this court found would have satisfied the duty to protect the defendant's right to confrontation was to videotape the victim's preliminary hearing testimony; here, the conditional examination was videotaped under the same statutory guidelines as were mentioned in the *People v. Roldan* case. (*Id.* at pp. 980-981; see Pen. Code, §§ 1335-1345.)

Defendant argues that he was prejudiced by the trial court's refusal, on the day of the conditional examination, to reconsider his objections. When the trial court granted the order for a conditional examination, Judge Gregg L. Prickett stated: "The court's going to overrule the objections without prejudice. You may make those

13

objections more specifically before this court on that Friday.  It will be the first matter I call that Friday morning.  I will be holding a courtroom, but I am not going to require another person to get up to speed on the unique specifics of what's going on here."  On the day of the conditional examination, however, Judge William R. Froeberg refused to consider defendant's renewed objections to the examination.  The power of one judge to vacate an order made by another judge is strictly limited, so as to "ensure the orderly administration of justice."  (*In re Alberto* (2002) 102 Cal.App.4th 421, 427.)  The two grounds authorizing one judge to reconsider the order of another judge—where the first judge is unavailable, and where the first order was made through inadvertence, mistake, or fraud (*id.* at p. 430)—have not been proven here.  Moreover, defendant fails to show that anything had changed between the time that Judge Prickett ordered the conditional examination, and the time the examination commenced before Judge Froeberg.

Defendant argues that the court erred in granting the conditional examination because the minor was not "about to leave the state," as provided by Penal Code section 1336, subdivision (a).  Because the court entered the order granting the conditional examination while the minor was committed to the juvenile hall pursuant to Penal Code section 1332, defendant argues the conditional examination order was invalid.  Defendant's argument would prevent a court from ever releasing a witness in favor of that witness's testimony by means of a conditional examination, no matter how long the commitment lasted.

We reject defendant's argument that the prosecution sought a conditional examination of the minor for the purpose of obtaining her testimony before the defense had adequate time to prepare, or in violation of Penal Code section 1341, which authorizes the trial court to deny a request for conditional examination if it is sought "to avoid the examination of the witness at the trial."  Defendant offers no evidence supporting this argument.  To the contrary, there is ample evidence that the prosecution sought the conditional examination so that the minor, a 14 year old who had been the

14

victim of a sex crime, could be returned to her home to receive necessary therapy, rather than housed in juvenile hall where necessary services were unavailable.

## II.

### *THE TRIAL COURT DID NOT ERR IN ADMITTING THE CONDITIONAL EXAMINATION.*

Defendant also argues that the trial court erred by admitting the minor's testimony from the conditional examination at trial. At a hearing at the start of trial, the court (1) denied defendant's motion under Evidence Code section 730 for the appointment of a psychiatrist or psychologist to review the minor's medical records; (2) found that the minor was unavailable to testify, pursuant to Evidence Code section 240, subdivision (a)(3); and (3) granted the prosecution's motion to allow into evidence the minor's conditional examination testimony.[8]

### A.

### *Standard of Review*

The trial court's order on a motion to allow a conditional examination to be admitted at trial is reviewed for abuse of discretion. (*People v. Jurado* (2006) 38 Cal.4th 72, 114; *People v. Cadogan* (2009) 173 Cal.App.4th 1502, 1512-1513.)

### B.

### *Refusal to Appoint Expert Pursuant to Evidence Code Section 730*

"When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required . . . by any party to the action, the court . . . on motion of any party may appoint one or more experts to investigate, to render a

---

[8] The transcript of the hearing was sealed. This opinion will only summarize the testimony and arguments of counsel.

report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required." (Evid. Code, § 730.) We review the trial court's refusal to appoint an expert for defendant for abuse of discretion. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1255.)

"Evidence Code section 730 provides for appointment of ancillary services at public expense for indigent criminal defendants in noncapital cases only for purposes of defense at trial on the issue of guilt." (*People v. Stuckey* (2009) 175 Cal.App.4th 898, 908.) "The ability to prepare a defense to criminal charges is the touchstone of the right to appointment of defense experts. A trial court must appoint an expert for a defendant when necessary to address what is 'likely to be a significant factor *at trial*.' [Citation.] Thus, the test for constitutional entitlement to appointment of defense experts focuses on whether a defendant requires assistance on an issue relating to guilt. Except for the penalty phase of capital cases, entitlement to defense experts is a right to prepare a defense to the criminal charges." (*Id.* at p. 915.)

Defendant sought the appointment of an expert psychiatrist or psychologist to assist in the review of the records provided by the minor's therapist. The therapist was neither a psychologist nor a psychiatrist. The therapist's written report and testimony explained why the therapist felt it would not be in the minor's best interests to travel to California to testify at defendant's trial. Defendant offered no evidence that the assistance of an expert witness was necessary to review and interpret the opinions of the minor's therapist. Further, the minor's unavailability was not an issue relating to defendant's guilt. The trial court did not abuse its discretion in denying defendant's request under Evidence Code section 730.

16

## C.

*The Trial Court Did Not Err in Admitting the Conditional Examination at Trial.*

Defendant claims he was prejudiced by the admission of the conditional examination for two reasons: (1) defendant's counsel did not have enough time to prepare for the examination, and (2) materials obtained after the conditional examination was taken could have been used to cross-examine or impeach the minor.

Defendant acknowledges that his right of confrontation is not absolute. (*Chambers v. Mississippi* (1973) 410 U.S. 284, 295; *People v. Valencia* (2008) 43 Cal.4th 268, 291.) If a witness is unavailable at trial, his or her former testimony may be admissible if the party against whom it is offered was a party to the action in which the former testimony was given, and he or she was given the opportunity to cross-examine the witness with an interest and motive similar to that which he or she has at the current hearing. (Evid. Code, § 1291, subd. (a)(2); *People v. Smith* (2003) 30 Cal.4th 581, 611.)

Defendant's counsel objected to the time provided to prepare for the conditional examination. Defendant's counsel had just recently been appointed, and was given 10 days to review between 500 and 600 pages of discovery before the conditional examination. However, before setting the date for the conditional examination, the trial court had confirmed that defendant's counsel had no other commitments. Also, at that point, there was a codefendant who had separate counsel. Defendant does not argue on appeal that his counsel did not have time to review the then-existing discovery, nor does defendant identify any areas of investigation he was not able to pursue or issues on which he could not have questioned the minor because he did not have enough preparation time.

Defendant also argues that he was prejudiced because he could have cross-examined or impeached the minor with material discovered after the conditional examination. In *People v. Gonzales* (2012) 54 Cal.4th 1234, 1261, the defendant's son was determined to be unavailable to testify at trial because of the trauma he would suffer as a result. The videotaped testimony of the defendant's son from the preliminary

17

hearing was played at trial. (*Id.* at p. 1247.) The defendant argued his right to cross-examination was violated because his son's therapy records, with which he could have been cross-examined or impeached, were not made available until after the preliminary hearing. (*Id.* at p. 1262.) The Supreme Court concluded that the defendant nevertheless had a "meaningful opportunity to cross-examine" his son (*ibid.*), and found no error (*id.* at pp. 1262-1263; see *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1295 [admission of victim's preliminary hearing testimony was proper, although the defendant's counsel did not have the victim's written statement to the police at the preliminary hearing]).

Defendant identifies three evidentiary items he learned of after the conditional examination, which he could have used to cross-examine or impeach the minor at trial. The first is records from the Arizona juvenile authorities. However, at the hearing on the minor's unavailability, the prosecutor stated these records had been provided to defendant's trial counsel before the conditional examination, a fact defendant does not dispute.

The second evidentiary item at issue is the results of DNA testing on feminine hygiene materials found in the minor's underwear. These results revealed that neither the minor nor defendant could be excluded as contributors, and would have no apparent impact on the minor's credibility.

Finally, defendant complains that he did not have access to the minor's medical records, in which the minor told someone she had been held in a basement for three days before being transported to California. It appears from the appellate record that it was unclear whether the minor's comments were in connection with the current incident involving defendant, or a previous incident involving another perpetrator. Thus, the documents would have had little or no evidentiary value, even if defendant's counsel might have questioned the minor about them.

18

DISPOSITION

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050268 |
| v. | (Super. Ct. No. 13WF0628) |
| CHUNCEY TARAE GARCIA, | ORDER GRANTING REQUEST FOR PUBLICATION |
| Defendant and Appellant. | |

      The Orange County District Attorney has requested that our opinion, filed on October 31, 2016, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(1), (2), (6), (7), and (8). The request is GRANTED. The opinion is ordered published in the Official Reports.


                                       FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.